501 So.2d 649 (1986)
Gary CUNNINGHAM, et al., Appellants,
v.
James A. HALEY, et al., Appellees.
No. 86-161.
District Court of Appeal of Florida, Fifth District.
December 31, 1986.
Rehearing Denied January 30, 1987.
*650 Edward J. Richardson of Saxon & Richardson, P.A., Melbourne, for appellants.
Ralph Geilich, Melbourne, for appellees.
COWART, Judge.
This case involves the effect of the Marketable Record Title Act (Ch. 712, Fla. Stat.) on land use restrictions.
In a certain place in south Brevard County, a state road (formerly 140, now A1A) runs north and south roughly parallel with the Atlantic Ocean and about 270 feet west of the barrier dune along the ocean beach. In 1943 about 1400 feet of this strip of land between the state road and the ocean was subdivided into fourteen numbered lots each about 100 feet wide numbered from 24 on the north end to 37 on the south end and named First Addition to Ocean Park (Plat Book 9, page 25). In 1944 and 1945, in deeds conveying the fourteen lots, the subdivider placed restrictive covenants restricting the use of each lot to a dwelling (or duplex) and garage. Lots 28, 29 and 30, 32, 33, and 35 now contain five residential dwellings. A realty office has been operated on lot 36 since March, 1971. Lots 24, 25, 26, 27, 31, 34, and 37 are yet unimproved. About 1978 the area to the north and south and west of these fourteen lots commenced being developed into motels, condominiums, realty offices, service stations, banking facilities, and fast food establishments.
In 1978 the then owner (Haley, etc.) of the northernmost four lots (lots 24-27) brought an action, naming the owners of the remaining lots and seeking a declaration that the restrictive covenants were no longer valid. Mr. and Mrs. Acopian, who owned, and still own, a nice seasonally occupied home on lot 28, objected. The trial court found that past and continuing changes in the area of this property since the imposition of the restriction had frustrated the intent and purpose of the original subdivider and rendered the continued enforcement of the restrictions inequitable and held the restrictions no longer valid. This court reversed that determination in Acopian v. Haley, 387 So.2d 999 (Fla. 5th DCA 1980), rev. denied, 392 So.2d 1375 (Fla. 1981).
In this case appellants, owners of the southernmost lot 37 (the Cunninghams), lots 29 and 30 (the Hoffmans), lot 31 (Quesada), and lot 34 (the O'Haras), filed an amended complaint against all other numbered lot owners in the subdivision seeking to have the same restrictions held invalid as to their lots. They allege the neighborhood of the restricted lots has grown dramatically in a commercial direction since the prior action in 1978. They also allege that the use restrictive covenants were created in a recorded deed in 1944 prior to the *651 root of title[1] in each of appellants' chains of title and that appellants' titles have been made marketable and free and clear of the restrictive covenants by virtue of section 712.02, Florida Statutes, the Florida Marketable Record Title Act (MRTA). The owners of lot 28 (Acopian), lot 29 (Altman), and lot 33 (Warden), defended the action alleging and arguing (1) that the restrictive covenants in question were specifically identified by reference to book and page of record or by name of recorded plat in each of two prior law actions (an action in 1964 or 1966), (2) that in the action in 1978 which became the case of Acopian v. Haley, supra, the then owners of lots in this subdivision were parties, and (3) that this is sufficient under section 712.03(1) to preserve the restrictions from being cleared and eliminated by section 712.02(1), Florida Statutes. The trial judge, who was also the trial judge reversed in Acopian v. Haley, upheld the restrictive covenants, citing Acopian v. Haley.
Section 712.02(1), Florida Statutes, in effect provides that when any person and his predecessors in title have had an estate in land of record for thirty years or more, that person has a marketable record title free and clear of all claims except matters set forth in the exceptions in section 712.03. In this case, this means that section 712.02(1) clears the title of appellants of the land use restrictions unless those restrictions are preserved by section 712.03, which, in relevant part, provides as follows:
Such marketable record title shall not affect or extinguish the following rights:
(1) Estates or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title; provided, however, that a general reference in any of such muniments to easements, use restrictions or other interests created prior to the root of title shall not be sufficient to preserve them unless specific identification by reference to book and page of record or by name of recorded plat be made therein to a recorded title transaction which imposed, transferred or continued such easement, use restrictions or other interests; subject, however, to the provisions of subsection (5). (emphasis supplied)
In effect section 712.03 provides that as to use restrictions created prior to appellants' respective roots of title the restrictions are extinguished by section 712.02(1), Florida Statutes, unless the use restrictions are disclosed and specifically identified in one or more of the muniments of title in appellants' chains of title since the date of appellants' respective roots of title.
Appellees argue that a court proceeding can be a title transaction under the definition in section 712.01(3), Florida Statutes, and that all of the appellants or their predecessors in title were parties to two prior court proceedings and that such court proceedings sufficiently identified appellants' lots as to give them or their predecessors in title actual notice that the restrictions were valid and binding.
Appellees' argument misses the point of the Marketable Record Title Act and misconstrues section 712.03(1), Florida Statutes. The point is not whether appellants or their predecessors had notice of the restrictive covenants by virtue of being parties in prior litigation relating to the validity of the restrictions in 1978 as to lots 24-27. This case does not remotely involve the effect of "notice" (actual or constructive) of facts on the title of good faith purchasers. Under section 712.03(1), Florida Statutes, actual notice does not suffice to protect use restrictions created prior to a root of title from being extinguished by section 712.02(1), Florida Statutes. The material question is: Do muniments in the chain of title since the root of title disclose the use restrictions by specific reference so as to meet the provisions of *652 section 712.03(1) and thereby preserve the restrictions from being extinguished by section 712.02(1)? When applicable, section 712.02(1), Florida Statutes, simply clears basic titles of all adverse, limiting, or competing claims, estates, interests, easements, and use restrictions existing prior to the root of title unless muniments of title in the chain of title since the root of title specifically identify (by reference to book and page of record or name of recorded plat) a recorded title transaction which imposed, transferred, or continued such easement or use restrictions. The two law actions referred to by appellees do not fall within the proviso in the exception in section 712.03(1) for two reasons. First, the statute refers to both "title transactions" and "muniments of title" because, while somewhat similar, there is a difference between those terms. A title transaction within the meaning of this act is defined in section 712.01(3), Florida Statutes, and means any recorded instrument or court proceeding which affects title to any estate or interest in land and which describes the land affected with legal sufficiency. On the other hand the statute does not define "muniments of title." A muniment of title is any documentary evidence upon which title is based. Muniments of title are deeds, wills, and court judgments through which a particular land title passes and upon which its validity depends. Muniments of title need not be recorded to be valid notwithstanding that the recording statutes give good faith purchasers certain rights over the rights of persons claiming under unrecorded muniments of title.[2] Muniments of title do more than merely "affect" title; they must carry title and be a vital link in the chain of title. The two law actions relied on by appellees are not muniments in any chain of title because those two law actions do not transfer title to any estate and no title is dependent upon them notwithstanding that the 1978 action "affects," at least, the title to lots 24-27 by its adjudication that the title to those lots were still encumbered by the restrictions in question. Second, assuming each of the two law actions constitutes a "title transaction" within the definition in section 712.01(3), and "affected" the lots owned by appellants and "imposed, transferred or continued" the use restrictions, nevertheless, the two law actions are not effectual to comply with section 712.03(1) because they are not specifically identified (by reference to book and page of record or otherwise) in any muniment of title in the chain of title to appellants' lots since the root of title in those chains of title, as is required by the words "be made therein" contained in section 712.03(1), Florida Statutes.
In a nation such as ours, where property is subject to private ownership, the rights of citizens to own, to use, and to transfer land are most valued rights. The enjoyment of those rights is directly related to the existence of a relatively safe, simple, and inexpensive system for assuring the marketability of land titles and their ready transferability. Because of the enduring nature of land, the value of its use and ownership, and the variety and complexity of interests in land permitted under English and American law, land titles tend in time to accumulate defects, divergent claims and rights and restrictions and limitations which erode their marketability. Good public policy decrees that there be a limit to which these matters are permitted to adversely affect the marketability of land titles. The past should not be able to forever rule the present from the grave. The Marketable Record Title Act is intended to help with this problem. Thirty years is a reasonable time and, in addition, the statute provides a method for preserving and protecting claims, rights, and interests adverse to the one record title made marketable by the act. See § 712.05(1), Fla. Stat. See also Holland v. Hattaway, 438 So.2d 456 (Fla. 5th DCA 1983). It is the intent of sections 712.02(1) and 712.03(1), that easements and use restrictions *653 and other estates, interests, and claims created prior to the root of title be extinguished by section 712.03(1), Florida Statutes, unless those matters are filed under section 712.05(1) or unless, as provided in section 712.03(1), after the date of the root of title, some muniment of title refers specifically (which specific reference must be by book and page of record or by name of a recorded plat [if the easements and use restrictions, etc., are shown on the recorded plat]) to a recorded title transaction which imposed, transferred, or continued such easement, use restrictions, estate, interest, or claim.[3] The record in this case affirmatively shows, in accordance with appellants' allegations, that no title transaction imposing, transferring, or continuing the use restrictions in question (neither of the two deeds containing the original restrictive covenants, being a deed dated February 28, 1944 and recorded in Deed Book 271 at page 276 and a deed dated March 2, 1945, and recorded in Deed Book 279 at page 376 of the public records of Brevard County, Florida, nor either of the two law actions relied upon by appellees) has been specifically identified in muniments of title in appellants' chains of title since the date of the roots of title in each chain of title. Therefore the restrictive covenants in this case do not fall within the proviso as to restrictions predating the root of title contained in the Exceptions to Marketability in section 712.03(1), Florida Statutes, and were extinguished by section 712.02(1), Florida Statutes, thirty years from the date of recording of the root of title in the chain of title of each of the lots owned by appellants.
Accordingly, we hold that appellants have a marketable record title to their respective estates in and to lots 29 and 30, 31, 34, and 37, First Addition to Ocean Park, according to the plat of said subdivision recorded in Plat Book 9 at page 25 of the public records of Brevard County, Florida, free and clear of the restrictive covenants contained in the deeds dated February 28, 1944, and recorded in Deed Book 271 at page 276, and dated March 2, 1945, and recorded in Deed Book 279 at page 376 of the public records of Brevard County, Florida.
In view of the disposition of this case on the basis of the applicability and effect of the Marketable Record Title Act we do not consider the question of whether the restrictive covenants in question had become invalid and obsolete by virtue of substantial material changes in the use of land in the neighborhood of the restricted lots.[4]
The final judgment entered below is reversed with directions that upon remand the trial court direct the clerk of the lower court to enter this opinion as the final judgment in this case.
REVERSED and REMANDED.
DAUKSCH and ORFINGER, JJ., concur.
NOTES
[1] "Root of title" is defined by section 712.01(2) and "means any title transaction purporting to create or transfer the estate claimed by any person and which is the last title transaction to have been recorded at least 30 years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it was recorded."
[2] Recording statutes, such as section 695.01(1), Florida Statutes, are generally held to give constructive notice only as to matters in the muniments in the record chain of title to particular property and judgment liens against titleholders in the record chain of title.
[3] Standards 17.2 and 17.3, Uniform Title Standards of The Florida Bar  Real Property, Probate and Trust Law Section (1981 Revision); Attorneys' Title Insurance Fund, Title Note 28.03.01 (1981).
[4] See, for interest, Lancaster v. Banks, 492 So.2d 464 (Fla. 5th DCA 1986).