HARRIS, C., Senior Judge.
The issue in this case is whether the Marketable Record Titles to Real Property Act[1] (MRTA) has abrogated subdivision restrictions limiting certain lots to residential use so that the lots’ current use as a parking lot for an apartment complex is sustainable.
The lots in question are the first nine lots in Block F, Seminole Terrace Replat of Seminole County. Although the issue is similar to all lots, lots 3, 5, and 6 pose an additional consideration. The subdivision was created by a plat recorded in May, 1957. The recorded plat contains ño restrictions. However, restrictions executed at or about the time the plat was filed were not recorded until September of that year. But between the recording of the plat and the recording of the restrictions, lots 3, 5, and 6 were conveyed. It is urged by the homeowners that since the original purchasers had actual notice of the restrictions at the time they purchased the property, the delayed recording of the restriction was immaterial.
The developer first contends that the restrictions had no validity until they were recorded and that even if the initial purchasers had actual notice of the restrictions, the property could not be affected by the restrictions. We disagree. While it is true that a developer cannot for the first time create valid restrictions where none previously existed after he has sold the property claimed to be subject to the restrictions,[2] recording the restrictions is not essential to their validity. See A & P Inv. Group, Inc., v. Circle Property Owners Ass’n, Inc., 741 So.2d 1139 (Fla. 4th DCA 1998) (relying on “black letter law” principles that the agreement is not a covenant running with the land because it does not contain the word “assigns,” because it was not contained in a deed, and because it was not recorded, is not on point because the principles recited do not apply where the subsequent owner has actual knowledge). The question as to these lots is whether actual notice existed.
The developer next contends that the affidavit purporting to establish actual notice on the part of the initial purchasers is insufficient as a matter of law and that the trial court properly refused to consider them. We agree as to lots 5 and 6. We find the affidavits insufficient to create an issue as to these lots and agree that the trial court was justified in rejecting them. However, as to lot 3, we find the affidavit sufficient to create an issue as to whether the initial grantee took with notice of the single family residential restriction and, if this were the only issue, would reverse the summary judgment.
One of the original purchasers who took title two months prior to the recording of the restrictions stated under oath that he knew that the lot he was purchasing was subject to a single family restriction. The fact that he said this information came from an employee of the developer (hearsay) does not make his admission of notice inadmissible. See Sacred Heart Hosp. of Pensacola v. Stone, 650 So.2d 676 (Fla. 1st DCA), rev. denied, 659 So.2d 1089 (Fla.1995) (The court properly allowed the testimony on the ground that it was not offered to prove the truth of the matter asserted, but rather was introduced to show the owner’s knowledge concerning the maintenance.) Even though the court *920 erred in not considering this affidavit, if the restrictions are no longer valid because of MRTA, the error is harmless.
Concerning the remaining lots, the original restrictions were properly recorded and recorded in the appropriate chain of title. The issue on these lots (and now as to lot 3) is whether after 30 years without reference to the restrictions, MRTA has rendered the restrictions invalid. The purpose of MRTA is to extinguish claims which are at least 30 years old and which predate the root of title of the property in question. Here, the root of title for lots 7 and 8 is September, 1958; for lot 4, May, 1959; for lot 1, August, 1959; for lot 9, April, 1961; and for lot 2, May, 1963. The original restrictions were recorded in September, 1957 and the amended restrictions (which insofar as these lots are concerned merely reinstated the original restrictions) were recorded in January, 1959. An amendment to the restrictions which permitted some additional lots to be used for commercial purposes and merely referenced that the previous restrictions applied to the remaining lots was recorded in February, 1965.
First we consider the effect of MRTA on Lot 3. The limiting restriction was imposed on Lot 3 not by the recording of the restrictions in January, 1959, making them “run with the land” (it was not within the grantee’s chain of title), but by actual notice of the restriction and the implied agreement by the grantee (by accepting the deed with knowledge) to comply with it. Although the grantee was bound by this restriction, it was a commitment existing when the grantee took title and should be subject to the MRTA limitation.[3] Certainly if the recorded restrictions are no longer enforceable because of MRTA, then merely having actual notice of them should not breathe new validity into them.
Clearly MRTA extinguishes all limitations imposed by the initial recorded restrictions as to all lots except 3,5, and 6 because they are over 30 years old and predate the root of title of all such lots and no exception applies.[4] But what is the effect of the amended restrictions which were recorded after the root of title but *921 outside the chain of title to lots 7 and 8? The initial restrictions reserved the right for the owner of at least 50% of the lots to amend the restrictions and this was agreed to by the purchasers of lot 7 and 8 by accepting the deed. As urged by the landowners, the purchaser should be bound by subsequent amendments contemplated and authorized at the time of his purchase so long as he has notice of them and so long as the amendments are made in accordance with the reserved authority. But the developer, even if it had the authority to amend the restrictions as to all lots,[5] did not purport to do so in executing the amended restrictions.[6] The developer did not purport to amend the restrictions as the “owners” of 50% of the property; it stated in the amendment that it owned certain land in Seminole County and appears to have limited its amendment to such property.[7] And in any event, the recording of the amended restrictions outside the chain of title of lots 7 and 8 did not give constructive notice. We find the amended restrictions inapplicable to lots 7 and 8.
The amended restrictions were filed within the chain of title of lots 1, 2, 4, and 9 but even assuming the amendment was intended to apply to all lots originally owned by the developer, the amendment would be extinguished as to these lots because it predates their root of title, is over 80 years old and no exception applies.
Does the amendment to restrictions recorded in February, 1965, which was recorded after the root of title, affect lots 1, 2, 4, and 9? The only reference this document makes to the lots involved in this action is “[e]xcept as amended by the foregoing, the restrictions previously recorded for said subdivision remain unchanged.” This instrument does not by its terms impose any new restrictions and it is insufficient to reimpose the original restrictions by reference for the same reason that the earlier amended restrictions did not do so. It does not meet the requirement of section 712.03(1) to refer by book and page number to the instrument “which imposed, transferred or continued such ... use restriction.” A general reference to the rep-lat does not reimpose restrictions which were created by a separate instrument. Since the amendment merely refers back to the original restrictions and since the original restrictions are extinguished by MRTA, the amended restrictions do not affect these lots.
Finally, the landowners contend that an exception exists which prevents MRTA from applying to the restrictions *922 recorded after the root of title. They cite section 712.03(4) Fla. Stat. (2001), which exempts “estates, interests, claims, or charges arising out of a title transaction which has been recorded subsequent to the effective date of the root of title.” They rely on the definition of title transaction appearing in section 712.01(3) which is “any recorded instrument or court proceeding which affects title to any estate or interest in land and which describes the land sufficiently to identify its location and boundaries.” Since they claim the amended restrictions and the amendment to restrictions meet this definition, MRTA does not extinguish them. First, we do not believe the legislature intended that a covenant or restriction be considered an estate, interest, claim, or charge affecting title. In subsection 712.03(2), the legislature distinguished between “estates, interests, claims or charges” and “covenants or restrictions.” Further, even if restrictions fall within subsection 712.03(4), we believe that to be a “title transaction,” the instrument must not only affect title but must also be within the chain of title of the property involved. In other words, mortgages, judgment liens, etc. which appear in the chain of title after the root of title are not extinguished by MRTA. Otherwise, wild deeds could create problems sought to be eliminated by MRTA. The only instrument which was within a chain of title of lots involved herein was the amended restrictions recorded in September, 1957, and they are ineffective as to said lots for the reasons previously stated.
AFFIRMED.
PALMER, J., and COBB, W., Senior Judge, concur.

. Ch. 712, Fla. Stat. (2001).

. See Endruschat v. American Title Insurance Company, 377 So.2d 738 (Fla. 4th DCA 1979).

. The issue for MRTA consideration is not whether the owner is bound by a validly recorded instrument (he may well be bound so long as the instrument is valid); the issue is whether MRTA extinguishes the obligation as it relates to real property if the provisions of MRTA are met. In Cunningham v. Haley, 501 So.2d 649, 652 (Fla. 5th DCA 1986), this court considered the effect of actual notice as it relates to restrictions (a similar issue because to know of applicable restrictions is to be bound by them) and stated:
The point is not whether appellants or their predecessors had notice of the restrictive covenants.... [A]ctual notice does not suffice to protect use restrictions created prior to a root of title from being extinguished by section 712.02(1), Florida Statutes. The material question is: Do muniments in the chain of title since the root of title disclose the use restrictions by specific reference so as to meet the provisions of section 712.03(1) and thereby preserve the restrictions from being extinguished by section 712.02(1)?

. The Supreme Court in Sunshine Vistas Homeowners Ass’n v. Caruana, 623 So.2d 490 (Fla.1993), recognized the applicable exceptions when it held:
... a thirty-one-year-old restriction is preserved if the root of title or a subsequent muniment contains a "specific identification” to a recorded title transaction that imposed, transferred, or continued the restriction. ... The "specific identification” to the title transaction can be made in one of two ways:
(1) by reference to the book and page in the public records where the title transaction that imposed the restriction can be found, or
(2) by reference to the name of a recorded plat that imposed the restriction.
623 So.2d at 491-92.

.The authority to amend is set out in the initial restrictions as: "These restrictions may only be removed or amended by the consent of the owners of Fifty Per Cent (50%) of the property, evidenced by an instrument duly executed and filed.” A purchaser agreeing to this provision would assume that before an amendment could be approved which would affect his interest in the property, all owners would receive notice and have an opportunity to be heard. This provision is not the same as one which reserves to the developer so long as he holds a majority of the lots the sole authority to amend and it should not be so construed.

. We find that the amendment to the restrictions does not reimpose the initial restrictions because, even though it refers to the original replat by book and page number, it does not so refer to the instrument creating the original restrictions. The replat imposed no restrictions. See section 712.03(1), Fla. Stat.

. Notice the difference in form when the developer filed the amendment of restrictions on February 4, 1963. There the developer purports to amend the restrictions as "owner of more than fifty-one percent (51%) of the lots.” While this, is a technical distinction, section 712.19 requires that MRTA be liberally construed to effectuate the purpose of facilitating land transactions.