CRENSHAW, Judge.
 

 Joseph Gerhard Matissek and Kelly Beth Matissek,
 
 [1]
 
 homeowners in the deed restricted community of Hidden Lakes Estates, in Pasco County, Florida, appeal a final judgment directing them to bring an airplane hangar built on their property in compliance with the Hidden Lakes Estates’ deed restrictions. The issue that we must decide is whether the Marketable Record Titles to Real Property Act (MRTA), chapter 712, Florida Statutes (2008), extinguished both the original and amended restrictions placed upon the Ma-tisseks’ property. We find the MRTA did extinguish these restrictions, and therefore the Matisseks have a free and clear, marketable record title to their property. Accordingly, the circuit court erred as a matter of law by failing to enter a final summary judgment in favor of the Matis-seks on this basis, and we reverse.
 
 [2]
 

 The original and amended restrictions
 

 On April 16, 1971, developer Hidden Lakes Estates, Inc. (HLEI) platted a parcel of land known as “Hidden Lakes Estates Unit One.” This plat was recorded at Plat Book 10, Pages 80-81 of the Public Records of Pasco County, Florida. HLEI designed Hidden Lakes Estates to be an airpark community that would include its own airport and permit its residents to construct aircraft hangars on their property. In support of this plan, HLEI also recorded restrictions, titled “Hidden Lake Estates Restrictions,” to be placed upon all lots in Unit One. Of particular importance, provision (9) of the restrictions required that “[a]ll buildings shall be constructed of masonry or similar materials.” The restrictions also stated in provision (27) that “[t]he Developer reserves the right to modify restrictions on any lot or lots,” and in provision (31) that “[t]he Developer, or its assigns, reserves the right to make reasonable modifications and clarifications to any and all restrictions set forth herein.” HLEI recorded these restrictions on May 18, 1971, at O.R. Book 544, Pages 248-51, of the Public Records of Pasco County, Florida.
 

 On August 15, 1977, HLEI recorded an amendment to the original restrictions pursuant to its authority under provision (31). The amended restrictions deleted provisions (14), (27), and (31), amended provisions (5), (8), and (18), and stated that the “remaining restrictions shall remain in full force and effect.” This amendment, which will be referred to as Amendment 1, was recorded at O.R. Book 904, Pages 126-27.
 

 On November 7, 1977, HLEI recorded another amendment to amend both the original restrictions and Amendment 1 pursuant to provision (31) of the original restrictions.
 
 [3]
 
 This amendment, which will be referred to as Amendment 2, provided a list of restrictions that “shall be controlling and binding on all future owners of properties” in Hidden Lakes Estates. The list of restrictions included the same provision (9)
 
 *627
 
 that was in the original restrictions. HLEI recorded this amendment at O.R. Book 915, Pages 1910-18.
 

 Between recording the original restrictions in 1971 and Amendments 1 and 2 in 1977, HLEI gave Peter Dreher an indenture for lots 28, 24, 25, and 26 in Unit One of Hidden Lakes Estates. The indenture, recorded on June 28, 1974, simply stated that these lots, as recorded in Plat Book 10, Pages 80-81, were “[s]ubject to easements and restrictions of record.” Mr. Dreher then conveyed the indenture for lots 23, 24, and 25 to Stephen Covert, which was recorded on April 14, 1980. Though this indenture referred to the plat recorded at Plat Book 10, Pages 80-81, it did not refer to any restrictions. After this conveyance, lot 25 and a portion of lot 24 changed hands three times — from Mr. Covert to Radial Development Corporation (RDC), from RDC to Charles and Johnnie Coward, and from the Cowards to Agnes Rice, respectively. Each of these conveyances was properly recorded in Pasco County, and each of these conveyances described the parcel from the plat recorded at Plat Book 10, Pages 80-81. Two of the conveyances — from Mr. Covert to RDC and from RDC to the Cowards— contained a general statement that the parcel was “[s]ubject to easements of record,” and the third conveyance from the Cowards to Ms. Rice made no mention of any restrictions.
 

 The Matisseks’ acquisition of the subject 'property
 

 Finally, on December 18, 1995, the Ma-tisseks became the fee simple owners of lot 25 and a portion of lot 24. The warranty deed granting them the subject property from Ms. Rice did not cite to the original plat, nor did it mention any restrictions on the property. During the summer of 2007, Mr. Matissek began constructing an airplane hangar on the property and submitted his plans to Pasco County to get a permit to build a pre-engineered hangar containing a steel frame and steel paneling. Unfortunately for Mr. Matissek, fellow Hidden Lakes Estates resident Roland Waller noticed the construction and believed Mr. Matissek’s plan to place a metal exterior on his hangar violated provision (9) of the Hidden Lakes Estates’ restrictions requiring all buildings to be constructed of masonry or similar materials. Mr. Waller communicated to Mr. Matissek that if he did not bring the hangar in compliance with the Hidden Lakes Estates’ restrictions, an injunction would be sought. Despite this warning, Mr. Matis-sek continued with the construction of his hangar, and Mr. Waller filed a complaint in January 2008 seeking a mandatory injunction requiring the hangar’s removal.
 
 [4]
 
 We note that during the pendency of Mr. Waller’s action, Mr. Matissek applied a stucco finish covering the hangar’s metal exterior.
 

 The summary judgment motion
 

 The Matisseks filed a motion for summary judgment arguing the MRTA extinguished HLEI’s 1971 restrictions and 1977 amended restrictions. The circuit court denied the motion, and the matter proceeded to trial. The circuit court found at the conclusion of the proceedings that the MRTA extinguished the 1971 restrictions but did not extinguish the 1977 amended restrictions because the amended restrictions were recorded after the root of title created by the 1974 conveyance of the property from HLEI to Mr. Dreher. Ac
 
 *628
 
 cordingly, the circuit court found that Mr. Matissek’s hangar did not comply with the 1977 amended restrictions
 
 [5]
 
 and entered a final judgment directing Matissek to bring the hangar in compliance by either removing the hangar or by constructing “masonry walls of block, brick, prestressed concrete or other masonry materials to the building.”
 

 On appeal, the Matisseks argue the circuit court misapplied the MRTA because the 1977 amended restrictions could not stand alone and the original 1971 restrictions could only be preserved through specific identification in the muniments of title under section 712.03(1) or by recording a proper notice under sections 712.03(2), 712.05, and 712.06, which was never done. Therefore, they contend the circuit court erred by denying the motion for summary judgment because the original 1971 restrictions and 1977 amended restrictions were extinguished by the MRTA as a matter of law. Our standard of review of a motion for summary judgment is de novo.
 
 See, e.g., Shaw v. Tampa Elec. Co.,
 
 949 So.2d 1066, 1069 (Fla. 2d DCA 2007);
 
 see also Deep S. Sys., Inc. v. Heath,
 
 843 So.2d 378, 379 (Fla. 2d DCA 2003) (“Orders granting or denying motions for summary judgment are reviewed de novo.”).
 

 Background of the MRTA
 

 The Florida Legislature enacted the MRTA in 1963 to simplify and facilitate land transactions.
 
 See Blanton v. City of Pinellas Park,
 
 887 So.2d 1224, 1227 (Fla.2004). To effectuate this legislative purpose, section 712.10 requires the MRTA “be liberally construed ... by allowing persons to rely on a record title as described in [section] 712.02 subject only to such limitations as appear in [section] 712.03.” Section 712.02, titled “Marketable record title; suspension of applicability,” provides:
 

 Any person having the legal capacity to own land in this state, who, alone or together with her or his predecessors in title, has been vested with any estate in land of record for 30 years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in [section] 712.03.
 

 Similarly, section 712.04, titled “Interests extinguished by marketable record title,” provides:
 

 Subject to the matters stated in [section] 712.03, such marketable record title shall be free and clear of all estates, interests, claims, or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to the effective date of the root of title.
 

 Subsection (1) of the exceptions listed under section 712.03 states:
 

 Such marketable record title shall not affect or extinguish the following rights:
 

 (1) Estates or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title; provided, however, that a general reference in any of such muniments to easements, use restrictions or other interests created prior to the root of title shall not be sufficient to preserve them unless specific identification by reference to book and page of record or by name of recorded plat be made therein to a recorded title transaction which imposed, transferred or continued such easement, use restrictions or other interests; subject, however, to the provisions of subsection (5).
 

 Finally, the “root of title” is defined under section 712.01(2) as
 

 
 *629
 
 any title transaction purporting to create or transfer the estate claimed by any person and which is the last title transaction to have been recorded at least 30 years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it was recorded.
 

 The application of the MRTA to the Ma-tisseks’ property
 

 In this case, the circuit court determined that the effective date of the root title of the Matisseks’ property was June 28, 1974, when HLEI gave Peter Dreher an indenture for lots 23, 24, 25, and 26. The parties do not dispute this finding, nor do we. Because this action commenced in January 2008, and because the next recorded title transaction after the original indenture occurred in 1980, the 1974 indenture was the last title transaction to have been recorded prior to the circuit court’s determination of the subject property’s marketability.
 

 The circuit court also found that the 1971 restrictions, which predated the 1974 root of title, were extinguished by the MRTA in accordance with section 712.04. We agree with the circuit court’s determination because there is nothing in the record which would provide an exception to the marketability under section 712.03. Standing alone, the 1974 indenture was insufficient to preserve the 1971 restrictions because the indenture’s vague provision that the conveyance was “[sjubject to easements and restrictions of record” did not comply with the “specific identification” language of section 712.03(1). Rather, “ ‘specific identification’ to the title transaction can be made in one of two ways: (1) by reference to the book and page in the public records where the title transaction that imposed the restriction can be found, or (2) by reference to the name of a recorded plat that imposed the restriction.”
 
 Sunshine Vistas Homowners Ass’n v. Caruana,
 
 623 So.2d 490, 491-92 (Fla.1993) (quoting § 712.03(1), Fla. Stat. (1989)). Although the 1974 indenture does cite to the original plat recorded on April 16, 1971, the indenture does not reference the book or page of the title transaction or the name of the plat that imposed the original restrictions on May 18, 1971.
 
 [6]
 

 See Martin v. Town of Palm Beach,
 
 643 So.2d 112, 114 (Fla. 4th DCA 1994) (finding use restrictions created prior to the root of title are extinguished by section 712.02 unless the use restrictions are disclosed and specifically identified in a muniment of title);
 
 but cf. Canana,
 
 623 So.2d at 490 (finding the MRTA did not extinguish plat restrictions recorded in 1925 because subsequent mu-niments of title recorded in 1951,1977, and 1990 contained specific identifications referencing the 1925 plat).
 

 Despite finding that the MRTA extinguished the 1971 restrictions, the circuit court then simply concluded, without explanation, that the MRTA “[did] not cut off the 1977 deed restrictions.” The Matis-seks contend this was error because the 1977 amendments could not exist independently of the original 1971 restrictions and should either have been extinguished or been found simply inapplicable to their property pursuant to
 
 Berger v. Riverwind Parking, LLP,
 
 842 So.2d 918 (Fla. 5th DCA 2003).
 

 We agree that the 1977 amended restrictions, just like the 1971 restrictions,
 
 *630
 
 do not provide an exception under section 712.03 that would prevent HLEI’s interest in the property from being extinguished under section 712.04. The 1977 amendments address revisions to the 1971 restrictions and do not concern a chain of title to any property, let alone the Matis-seks’ property. Thus, the amendments are not considered to be “muniments of title,” and subsection 712.03(1) is inapplicable.
 
 [7]
 
 Similarly, the 1977 amendments do not apply under subsection 712.03(4) because the amendments are not “title transactions” as defined in section 712.01 (3),
 
 [8]
 
 and the legislature did not intend that a covenant or restriction be considered an estate, interest, claim, or charge affecting title.
 
 See Berger,
 
 842 So.2d at 922 (noting the legislature’s purposeful distinction between “estates, interests, claims or charges” and “covenants or restrictions” in subsection 712.03(2)).
 

 We also find that the 1977 amended restrictions in this case were recorded outside of the chain of title of the Matisseks’ property, similar to the factual scenario presented in
 
 Berger.
 
 842 So.2d at 918.
 
 Berger
 
 addressed the application of the MRTA to nine lots which had restrictions limiting these lots to residential use. Lots 7 and 8, which are the most factually relevant in our case, concerned restrictions that were recorded in September 1957, roots of title that were created in September 1958, and amended restrictions that were recorded in January 1959. The amended restrictions, as applied to lots 7 and 8, “merely reinstated the original restrictions.”
 
 Id.
 
 at 920.
 

 The Fifth District determined in
 
 Berger
 
 that the MRTA extinguished all limitations imposed by the initial restrictions recorded in September 1957 as to lots 7 and 8 (and as to some of the other lots) because the limitations were over thirty years old, predated the root of title, and did not fall under any exception in section 712.03.
 
 Id.
 
 As to the amended restrictions created in January 1959, the court found that the developer of the lots did not purport to amend the restrictions in a manner consistent with the original restrictions.
 
 [9]
 

 Id.
 
 at 921. More importantly, the court concluded that because “the recording of the amended restrictions outside the chain of title of lots 7 and 8 did not give constructive notice,” the amended restrictions were inapplicable to those lots.
 
 Id.
 

 Likewise, it is hard to see in this case how the Matisseks would have known of the masonry restriction under provision (9) because the 1974 root of title and the subsequent title transactions to Mr. Covert, RDC, the Cowards, and Ms. Rice fail to comply with the “specific identification” language of subsection 712.03(1). None of the conveyances reference either the original 1971 restrictions or the 1977 amended restrictions.
 
 See Cunningham v. Haley,
 
 
 *631
 
 501 So.2d 649, 65B (Fla. 5th DCA 1986) (finding restrictive covenants to be extinguished under the MRTA and noting that “no title transaction imposing, transferring, or continuing the use restrictions in question ... has been specifically identified in muniments of title in appellants’ chains of title since the date of the roots of title in each chain of title”).
 

 Therefore, we find the circuit court erred by denying the Matisseks’ motion for summary judgment as a matter of law because the MRTA extinguished the original 1971 restrictions and 1977 amended restrictions placed upon the Matisseks’ property. Accordingly, we reverse the entry of final judgment in favor of Mr. Waller and direct the circuit court on remand to enter a final summary judgment finding that the Matisseks have a marketable record title to their property that is free and clear of any of HLEI’s earlier restrictions.
 

 Reversed and remanded.
 

 ALTENBERND and KHOUZAM, JJ., Concur.
 

 [1]
 

 . Kelly Beth Matissek is Joseph Gerhard Ma-tissek's ex-wife. Although she is listed as a party in the circuit court proceedings and in this appeal, she did not assist in constructing the airplane hangar under review, and she did not testify at trial.
 

 [2]
 

 . Though the Matisseks raise two other issues on appeal, we find their first issue is disposi-tive. Therefore, we will not address their remaining arguments.
 

 [3]
 

 .Though it is not pertinent to our findings, we observe that this amendment does not address the earlier deletion of provision (31) in Amendment 1.
 

 [4]
 

 . As Mr. Waller notes in his communications to Mr. Matissek, the Hidden Lakes Estates did not create a standing homeowners association to enforce the deed restrictions. Rather, Mr. Waller pursued this action as an interested party with an ownership interest in Unit One of Hidden Lakes Estates.
 

 [5]
 

 . The circuit court
 
 did
 
 not differentiate between Amendments 1 and 2 in its findings.
 

 [6]
 

 . Though the circuit court did not address the Matisseks’ other argument concerning the failure of any interested party to file a proper notice under sections 712.03(2), 712.05, and 712.06 to preserve the original 1971 restrictions, we observe that there was no evidence in the record indicating any recorded notice that would have satisfied the requirements of these sections.
 

 [7]
 

 . A muniment of title is any documentary evidence upon which title is based. Muni-ments of title are deeds, wills, and court judgments
 
 through which a particular
 
 land
 
 title passes and upon which its validity depends. ...
 
 Muniments of title do more than merely “affect” title; they must carry title and be a vital link in the chain of title.
 

 Cunningham v. Haley,
 
 501 So.2d 649, 652 (Fla. 5th DCA 1986).
 

 [8]
 

 . " 'Title transaction’ means any recorded instrument or court proceeding which affects title to any estate or interest in land and which describes the land sufficiently to identify its location and boundaries.” § 712.01(3).
 

 [9]
 

 .Berger
 
 also pointed out that the amendment to the restrictions did not reimpose the initial restrictions because the amendment did not refer to the instrument creating the original restrictions. 842 So.2d at 921 n. 6. In contrast, Amendments 1 and 2 both cite to the original restrictions at O.R. Book 544, Pages 248-51 as their bases to amend the restrictions.