BERGER, J.
Robert Mullins appeals a summary final judgment ordering the partition and sale of the residence he and his siblings, Kenneth Mullins and Carla Mullins, inherited from their mother, Sarah Jane Mullins. He argues that the trial court erred when, in ordering the partition, it relied solely on an order determining homestead instead of the directive in his mother's will bequeathing him and his brother Kenneth a life estate in the property and providing Carla with a remainder interest. Robert contends that his mother's will establishes the sibling's interest in the property, not the homestead order. We agree and reverse.
Ms. Mullins died testate in Orange County, Florida, leaving behind her three surviving children, the parties in this case. Her Last Will and Testament devised her homestead property to Robert, Kenneth, and Carla, in equal shares, subject to the following:
A. My sons, Robert F. Mullins and Kenneth D. Mullins shall be allowed to live in the property with the use of the furnishings as long as either one of them desires to live there: and
B. Robert F. Mullins and Kenneth D. Mullins shall each pay a share of the expense of maintaining the property while they are residing at the property, including, but not limited to, ad valorem taxes, insurance comparable to the insurance that I carried on the property during my lifetime, regular ordinary maintenance, and such other expenses as may be necessary to maintain the property in a condition comparable to the condition that it was in at the time of my death; and
C. If either Robert F. Mullins or Kenneth D. Mullins lives in the house for any period of time and then moves the son who moved shall pay a share of the expenses of maintaining the property based upon a pro rata share for the time period that he was living at the house. If both of my sons vacate the house then all of my surviving children shall pay a pro rata share of the cost of maintaining the property until the home is disposed of as agreed by them.
The probate court later entered an order determining homestead (Homestead Order), wherein it determined that the homestead property was properly devised and exempt from administration of the estate or the claims of Ms. Mullins's creditors. The Homestead Order reflects that the homestead property was devised in equal shares to Ms. Mullins's three children, but it neglects to mention the existence of Robert and Kenneth's life estates in the property. The significance of the failure to include the life estates in the Homestead Order is at issue in this case.
Prior to and immediately following their mother's death, Robert and Kenneth resided together on the property. Kenneth alleges that Robert's actions forced him to vacate the property. Currently, Robert resides *516 there with two tenants. As a result, Kenneth and Carla filed a complaint to partition the property. They alleged that the siblings own the property in equal parts as corroborated by the Homestead Order. Because Robert had made it impossible for anyone else to occupy the property, specifically Kenneth, Carla and Kenneth asked the trial court to partition and sell the property so that each sibling could receive their just and proper share.
Robert countered that their mother's will established the siblings' interest in the property, not the Homestead Order. He attached their mother's will to his answer to demonstrate as much. In response, Kenneth and Carla amended their complaint. In it they acknowledged that their mother's will gave Kenneth and Robert life estates, but asked, in the alternative, that the trial court extinguish the life estates based on Robert's actions.
Both parties filed competing motions for summary judgment, which were denied. The Honorable John E. Jordan recognized that the three children's equal shares in the property were subject to Robert and Kenneth living in the property for as long as either desired to live there, essentially agreeing with Robert that he and Kenneth possess a life estate interest in the property. Consequently, Judge Jordan found that although Kenneth could seek a partition against Robert, Carla could not because she had no current possessory interest in the property. Ultimately, however, Judge Jordan concluded that he could not enter summary judgment in favor of Robert because Kenneth presented evidence in support of partition and had a statutory right to petition for it. Kenneth and Carla's motion was denied because a genuine issue of material fact existed as to whether equity required premature termination of Robert's life estate so as to permit partition of the property. Specifically, Robert refuted Kenneth and Carla's allegation that Robert made it impossible for Kenneth to exercise his life estate.
Undeterred, Kenneth and Carla filed a second amended motion for summary judgment, claiming that the title report prepared by Commonwealth Land Title Insurance Company confirms that the Homestead Order is the only document that creates title in the property and it does not mention any life estate. This time, the parties appeared before a different judge and the motion was granted. This judge found:
[I]f there is a difference between the will that was admitted to probate and the actual Order Determining Homestead, it was cured by the consent of all three parties to this action as a matter of law, everybody agreeing to it, when the Plaintiff and Defendant executed and filed consents to the form of the Order. Therefore, the Order Determining Homestead entered on February 7, 2011 is entitled to be given the respect it deserves and therefore it controls. All three parties consented to the entry of that Order.
This judge further found that the Homestead Order is presently the only document of record that pertains to the parties' title to the real property. Accordingly, it ordered that the property be partitioned and sold, with each party getting a one-third interest. This was error.
The question for this Court is the impact the Homestead Order has on Robert and Kenneth's interests as set forth in the will. First, Kenneth and Carla assert that the consents to the Homestead Order altered the parties' individual interests in the estate. Second, Kenneth and Carla suggest that the Homestead Order constitutes a title transaction within the meaning of section 712.01(3), Florida Statutes (2011), and thereby extinguished the life estates in the *517 property. We disagree. We conclude, as Judge Jordan did in his order denying summary judgment, that the Homestead Order did not eradicate Robert and Kenneth's life estates.
In this case, the siblings all agree that their mother's will granted Robert and Kenneth a life estate in the homestead property. As set forth below, the Homestead Order did not create any new rights, and the consents thereto did not alter the parties' property rights established by the will. "[A]ny person to whom homestead property is devised under a will and who is categorized as an 'heir' in the intestacy statute, regardless of whether that person would be next in line had the decedent died intestate, receives protected homestead property under the Florida Constitution." McKean v. Warburton, 919 So. 2d 341, 345 (Fla. 2005), as revised on denial of reh'g (Jan. 5, 2006) (citing Snyder v. Davis, 699 So. 2d 999, 1005 (Fla. 1997) ). As the Second District succinctly explained in In re Estate of Hamel, 821 So. 2d 1276, 1280 (Fla. 2d DCA 2002) :
If the property is homestead on the date of death, the homestead protection is impressed upon the land and the protection from creditors' claims inures to the benefit of the heirs to whom the property is devised. See Bartelt v. Bartelt, 579 So.2d 282, 283 (Fla. 3d DCA 1991) (noting, "[t]he test is not how title was devolved, but rather to whom it passed").
Moreover, homestead rights exist and continue even in the absence of a court order confirming the exemption. See Raulerson v. Peeples, 77 Fla. 207, 81 So. 271 (1919) ; Clifton, 553 So. 2d at 194 ; Cavanaugh, 542 So. 2d at 1351. Thus proceedings to determine whether a property is homestead are permissive, not required. See Fla. Prob. R. 5.405(a) (providing an interested person may file a petition to determine homestead property); Clifton, 553 So. 2d at 194. Generally, petitions to determine homestead are initiated for the practical purposes of changing record title to the property or releasing the personal representative of any obligation regarding the property. See Rohan Kelley, Homestead Made Easy, Part I: Understanding the Basics, 65 Fla. B.J. 17, 20 (Mar. 1991). Such proceedings are similar to actions for declaratory relief that explain or clarify existing rights rather than determine new rights.
Based on this principle, the Homestead Order in this case did not create new rights, but rather explained or clarified the rights that already existed by operation of law. See Cavanaugh v. Cavanaugh, 542 So. 2d 1345, 1352 (Fla. 1st DCA 1989) (explaining that parties are not required to litigate homestead benefit because it inures to lineal descendants by virtue of section 732.401(1), Florida Statutes ). Nevertheless, Kenneth and Carla assert that the consents to the Homestead Order amounted to an agreement to alter Robert and Kenneth's life estates.
While "[h]eirs and beneficiaries may formally agree to alter their prescribed interests in an estate, ... such an agreement must be in writing and comply with section 733.815, Florida Statutes."[1]
*518 Clifton v. Clifton, 553 So. 2d 192, 194 (Fla. 5th DCA 1989) (footnote added). The consents signed by Robert, Kenneth, and Carla state that each beneficiary "hereby consents to the Petition to Determine Homestead Property; consents to the entry of an Order Determining Homestead Property; waives service of Notice of Hearing upon the undersigned and consents to entry of such order ex-parte." Conspicuously missing is any reference to an agreement to alter the interests, shares, or amounts to which Robert, Kenneth, and Carla are entitled under the will. See § 733.815, Fla. Stat. (2011). And as conceded by counsel, no contract between the three exists that would alter the interests, shares, or amounts to which they are entitled. Id. As such, the consents signed by Robert and Kenneth do not constitute an agreement to reject their life estates. The consents simply establish that the siblings consented to an order confirming their homestead exemption and nothing more.
Finally, the Homestead Order in this case does not constitute a title transaction, as defined by section 712.01(3), Florida Statutes (2011), extinguishing the life estates in the property. "A title transaction within the meaning of this act is defined in section 712.01(3), Florida Statutes, and means any recorded instrument or court proceeding which affects title to any estate or interest in land and which describes the land affected with legal sufficiency." Cunningham v. Haley, 501 So. 2d 649, 652 (Fla. 5th DCA 1986). Although the probate and recording of a will constitutes a title transaction within the meaning of section 712.01(3), see Mayo v. Owens, 367 So. 2d 1054, 1057 (Fla. 1st DCA 1979) ; Kittrell v. Clark, 363 So. 2d 373 (Fla. 1st DCA 1978), Kenneth and Carla point to no authority holding or suggesting that an order determining homestead property constitutes the same. Even if it did, Robert can assert an exception to the marketable title statute because he is in possession of the property. Indeed, "marketable record title shall not affect or extinguish the ... [r]ights of any person in possession of the lands, so long as such person is in such possession." § 712.03(3), Florida Statutes (2011).
Based on the foregoing, we conclude that Judge Jordan's Order Denying Cross Motions for Summary Judgment was correct, and we adopt his well-reasoned analysis as our own. Accordingly, we reverse the Summary Final Judgment of Partition entered upon Kenneth and Carla's second amended motion for summary judgment and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
EDWARDS and HARRIS, JJ., concur.

Section 733.815, Florida Statutes (2011), provides:
Subject to the rights of creditors and taxing authorities, interested persons may agree among themselves to alter the interests, shares, or amounts to which they are entitled in a written contract executed by them. The personal representative shall abide by the terms of the contract, subject to the personal representative's obligation to administer the estate for the benefit of interested persons who are not parties to the contract, and to pay costs of administration. Trustees of a testamentary trust are interested persons for the purposes of this section. Nothing in this section relieves trustees of any duties owed to beneficiaries of trusts.